IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHRISTOPHER WAYNE HAAKENSTAD,

                       Petitioner,

v.

DENISE SYMDON,

                       Respondent.

OPINION & ORDER

16-cv-702-jdp

---

Pro se petitioner Christopher Wayne Haakenstad, who is on extended supervision, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Haakenstad contends that the Circuit Court for St. Croix County erred by holding a procedurally defective hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), when he moved to suppress evidence challenging a warrant affidavit that led to a search of his apartment. He argues that the circuit court erred by denying him an opportunity to examine the affiant and by characterizing the hearing as a pre-*Franks* hearing when in fact it was a full *Franks* hearing. I allowed him to proceed beyond preliminary review, and the petition is now fully briefed.

I will deny Haakenstad's petition. Haakenstad's claim is barred under *Stone v. Powell*, 428 U.S. 465 (1976). And even if the circuit court held a procedurally defective hearing, the error was harmless because after excising the challenged portion of the affidavit, the remaining portions of the affidavit still showed probable cause.

BACKGROUND

I draw the following facts from Haakenstad's petition, his state court proceedings, and the record submitted by the parties. Dkt. 1 and Dkt. 15; *Wisconsin v. Haakenstad*, No. 11CF40 (St. Croix Cty. Cir. Ct. filed Feb. 4, 2011). All facts set forth below are undisputed.

**A. Warrant affidavit**

On November 18, 2010, law enforcement applied for a warrant to search Haakenstad's apartment. The application was supported by an affidavit from Brent Standaert, a member of the St. Croix Valley Drug Task Force at the St. Croix County Sheriffs Office. Standaert's affidavit contained information from Marty Folczyk, a City of Menominee detective, who had tips from an informant, M.H.

Here is what Standaert's affidavit said. M.H. told Folczyk, who in turn told Standaert that:

> On November 17, 2010, M.H. visited Haakenstad's apartment. Although Haakenstad had no methamphetamine at the time, he told M.H. that he would pick up an ounce later in the evening.

> On November 18, 2010, M.H. and his companion drove to Haakenstad's apartment, and M.H.'s companion bought 4.4 grams of methamphetamine from Haakenstad. M.H. saw a large bag of methamphetamine on Haakenstad's coffee table.

Folczyk told Standaert that:

> On November 18, 2010, Folczyk had M.H. call Haakenstad and listened to the conversation on speakerphone and heard Haakenstad told M.H. that Haakenstad had 16 grams of methamphetamine remaining.

> Police chief confirmed that Haakenstad's address provided by M.H. was correct.

> M.H. "is known to the West Central Drug Task Force and has given good information in the past."

2

Dkt. 15-8, at 2-3.[1] The government obtained a warrant and searched Haakenstad's apartment on November 18. The search uncovered drug paraphernalia and items that tested positive for methamphetamine and tetrahydrocannabinol (THC). The government charged Haakenstad with possession with intent to deliver methamphetamine, possession of THC, and possession of drug paraphernalia.

Haakenstad moved to suppress the evidence seized from the search of his apartment. He argued that Standaert's statement that M.H. "is known to the West Central Drug Task Force and has given good information in the past," was made with reckless disregard for the truth, and because of this defect in the affidavit, the evidence from the search must be suppressed. In his motion, Haakenstad requested a *Franks/Mann* hearing. Dkt. 19-2, at 3; *see also Franks*, 438 U.S. 154; *State v. Mann*, 123 Wis. 2d 375, 367 N.W.2d 209 (1985). To determine whether a *Franks/Mann* hearing was necessary for Haakenstad's motion, the Circuit Court for St. Croix County held a hearing on April 22, 2013.

## B. April 22, 2013 hearing

Before delving into what happened during the hearing, I begin with some legal background on *Franks/Mann* hearings. A criminal defendant is entitled to what is now known as a *Franks* hearing when he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56. At a *Franks* hearing the defendant has an opportunity to show by a preponderance of the evidence that the challenged statement was

---

[1] Neither side submitted Standaert's affidavit. The contents of the Standaert affidavit are drawn from the Wisconsin Court of Appeals' opinion. Dkt. 15-8. The parties do not dispute that the Court of Appeals accurately recounted the contents of the affidavit.

intentionally falsified or made with reckless disregard for the truth. *Id*. at 156. If the defendant makes this showing, then the court excises the challenged statement from the affidavit and evaluates whether the remaining portions of the affidavit would have shown probable cause. *Id*. If the remaining portions would not have shown probable cause, then the warrant is void, and the court suppresses the evidence seized during the search executed under the warrant. *Id*. On the other hand, if the affidavit would have shown probable cause even without the challenged portion, then the court denies the motion to suppress. *United States v. Mullins*, 803 F.3d 858, 862 (7th Cir. 2015). The *Franks* decision led to the Wisconsin Supreme Court's decision in *Mann*, which held that a defendant can challenge the probable cause determination for bringing a criminal complaint in a similar fashion as he would challenge a warrant affidavit under *Franks* and that omission of critical facts that alter the probable cause analysis can result in a dismissal of the criminal complaint. 123 Wis. 2d at 385.

And then there is the so-called "pre-*Franks*" hearing. When a court has doubt whether a *Franks* hearing is necessary, the court can hold a discretionary hearing to allow the defendant to supplement his motion. *See United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). But during this pre-*Franks* hearing, if the government presents evidence to reinforce the validity of the challenged affidavit, then the presiding judge must convert the pre-*Franks* hearing into a full *Franks* hearing and give the defendant an opportunity to rebut the government's evidence. *Id*. at 504–05, 509–10.

In Haakenstad's case, the April 22, 2013 hearing proceeded as follows. Haakenstad's counsel argued that M.H., the informant, was unreliable, pointing out that Standaert's affidavit omitted numerous details: M.H. had been smoking and injecting methamphetamine when he provided the information to Folczyk; M.H. was a drug dealer with outstanding warrants; M.H.

4

had previously "double crossed" the police during a drug bust; and M.H. previously cheated a meth buyer and took his money. Dkt. 42, at 8-12, 29-30. The attorney argued that these details would have affected the probable cause determination but were omitted in the affidavit. But the attorney conceded that he had no evidence that Standaert, the affiant himself, had known that Folczyk had omitted these details about M.H. *Id*. at 15. The focus of the hearing then became whether the information Folczyk got from M.H. was reliable, and the court decided to allow both sides to examine Folczyk.

Folczyk testified that he observed nothing unusual about M.H.'s condition, that he himself heard M.H. call Haakenstad, that he listened to the conversation between the two, and that during the phone call, he heard Haakenstad say that Haakenstad had methamphetamine. Haakenstad's attorney cross-examined Folczyk and inquired why there was no recording of the phone call between M.H. and Haakenstad. Folczyk explained that M.H. had adamantly refused to be recorded and that this refusal had been the reason why Folczyk had decided to monitor the phone call himself. *Id*. at 34–36, 38–42. The court ultimately concluded that the information Folczyk got from M.H. was reliable, and although the government offered to have Standaert take the witness stand, the court concluded that examining Standaert was unnecessary, *id*. at 48–49, and Haakenstad's attorney did not attempt to examine Standaert. The court concluded that a full *Franks* hearing was not necessary and denied Haakenstad's motion to suppress.

Haakenstad later pleaded guilty to one count of possession with intent to deliver methamphetamine and one count of delivery of methamphetamine. The circuit court sentenced him to two concurrent terms of imprisonment, each comprising two years of initial confinement and four years of extended supervision.

5

In proceedings that followed, Haakenstad argued that the April 22, 2013 hearing was a full *Franks* hearing and that the circuit court erred in denying his motion to suppress. The last state court that issued a reasoned opinion addressing Haakenstad's arguments petataining to his habeas petition is the Wisconsin Court of Appeals, which denied Haakenstad's petition under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). Dkt. 19-2.[2] The Wisconsin Court of Appeals reasoned that even with the challenged portion of Standaert's affidavit excised, the remaining portions of the affidavit still showed probable cause and therefore Haakenstad suffered no prejudice. Dkt. 19-2, at 5.

ANALYSIS

Under Section 2254, a federal district court may grant habeas relief only when a petitioner demonstrates that he is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Haakenstad is in custody because of a state judgment, so Section 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, governs his petition. 28 U.S.C. 2254(d). Section 2254(d) severely restricts a federal district court's review of a state judgment:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[2] After the *Knight* petition, Haakenstad filed a postconviction motion under Wis. Stat. § 974.06, which the Wisconsin Court of Appeals summarily denied without reaching Haakenstad's arguments that he now asserts in his habeas petition. Dkt. 15-15. Because the Court of Appeals did not reach the merits in denying the § 974.06 motion, the last reasoned opinion, and therefore the operative decision here, is the decision denying the *Knight* petition.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004). Once the state court adjudicates the petitioner's claims on the merits, the federal court must be "highly deferential" to the state court's decision. *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). To obtain habeas relief, the petitioner must show that the state court's decision "was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Habeas relief is "a guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (emphasis added).

Haakenstad contends that the Wisconsin courts misapplied federal law because they deprived him of a proper *Franks* hearing when he moved to suppress the evidence from his apartment. He argues that his hearing was deficient in two ways: he had no opportunity to examine Standaert, who wrote the affidavit in support of the warrant used to search his apartment; and the circuit court mischaracterized the hearing as a pre-*Franks* hearing when in fact it was a full *Franks* hearing. But neither of these issues entitles Haakenstad to habeas relief. Under *Stone v. Powell*, 428 U.S. 465 (1976), Haakenstad cannot re-litigate his motion to suppress in a habeas proceeding. Haakenstad contends that his petition is not barred under *Stone* because he is entitled to a narrow exception, which is that he was deprived of a full

7

opportunity to litigate his motion to suppress. But the Wisconsin state courts did give him a full opportunity to litigate his motion to suppress, so this exception does not apply.

Aside from *Stone*, Haakenstad could not suppress the evidence from his apartment even if the circuit court conducted his hearing exactly the way he wanted and treated the hearing as a full *Franks* hearing. A proper *Franks* hearing could have—at most—allowed him to excise the challenged portion of Standaert's affidavit. The remaining portions of the affidavit showed probable cause to search his apartment, so the failure to conduct a proper *Franks* hearing and treating the hearing as a pre-*Franks* hearing were harmless. The evidence from his apartment was properly seized, so Haakenstad is not held in custody in violation of federal law, and thus he is not entitled to habeas relief. I will deny his habeas petition.

## A. *Stone* bar

Haakenstad's habeas petition is barred under *Stone*. His petition, predicated on a motion to suppress evidence and a request for a *Franks* hearing, implicates the exclusionary rule. *See Hampton v. Wyant*, 296 F.3d 560, 562 (7th Cir. 2002); *United States v. Duke*, 16 F.3d 1226 (7th Cir. 1994). The exclusionary rule protects the "the right to be free from arbitrary intrusion by the police" by excluding "[e]vidence obtained by police officers in violation of the Fourth Amendment . . . in the hope that the frequency of future violations will decrease." *Stone*, 428 U.S. at 483, 492. So the exclusionary rule is fundamentally prophylactic—its primary purpose is to prevent future Fourth Amendment violations, not to protect the rights of the defendant in the case at hand. *See id.* at 479, 492. And the exclusionary rule "comes at a price, for excluding probative evidence of a defendant's wrongdoing 'deflects the truthfinding process and often frees the guilty.'" *Monroe v. Davis*, 712 F.3d 1106, 1113 (7th Cir. 2013) (quoting *Stone*, 428 U.S. at 490). In *Stone*, the Supreme Court held that relief under the exclusionary

8

rule is generally unavailable in a habeas proceeding because the costs of applying the rule outweigh its prophylactic benefits. *Stone*, 428 U.S. at 490, 493–94. The *Stone* rule is subject to a narrow exception, which is that in rare circumstances, a habeas petitioner can invoke the exclusionary rule by showing that he was deprived of "an opportunity for full and fair litigation of a Fourth Amendment claim." *Monroe*, 712 F.3d at 1114 (quoting *Stone*, 428 U.S. at 494).

A habeas petitioner has had an opportunity for full and fair litigation of a Fourth Amendment claim when "(1) he clearly apprised the state court of his Fourth Amendment claim along with the factual basis for that claim, (2) the state court carefully and thoroughly analyzed the facts, and (3) the court applied the proper constitutional case law to those facts." *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005) (citing *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)). The examples of situations that would fail to satisfy these requirements are extreme: the judge taking bribery, sleepwalking, saying something as egregious as "probable cause is not required in Illinois." *Cabrera v. Hinsley*, 324 F.3d 527, 531 (7th Cir. 2003). Only if the court's error "betray[s] an unwillingness on the part of the [state] judiciary to treat [the petitioner's] claim honestly and fairly" will a federal habeas court reach the merits of the Fourth Amendment challenge. *Monroe*, 712 F.3d at 1114. And an error by the trial court is not enough when the petitioner had a full and fair opportunity to litigate his Fourth Amendment challenge on appeal. *See id.* at 1115–16.

Here, the Wisconsin Court of Appeals' opinion shows that the court carefully considered Haakenstad's arguments, reviewed the record, and properly applied *Franks*. Perhaps the circuit court should have characterized the April 22, 2013 hearing as a full *Franks* hearing given that the government presented evidence to bolster the warrant affidavit, but what matters here is whether the Court of Appeals repeated the same error. *See id.* ("The fact that the

9

appellate court's analysis did not repeat the error is important, because its decision was the final decision of the Illinois courts to reach the merits of Monroe's Fourth Amendment claim, and as such it is that decision which matters for purposes of habeas review."). The Court of Appeals ultimately concluded that even if the circuit court erred in holding a procedurally deficient *Franks* hearing, the error was harmless because the challenged portion of the Standaert's affidavit did not affect the probable cause analysis. Dkt. 19-2, at 3-7. Although Haakenstad insists that the Court of Appeals' decision was wrong in deciding that the error was harmless, the issue that I will address below, Haakenstad does not contend that any aspect of the proceeding before the Court of Appeals was defective in any way. Haakenstad had a full opportunity to litigate his motion to suppress through a substantive appeal.

Haakenstad contends that he was deprived of a full opportunity to litigate his motion to suppress because the circuit court judge "had his mind closed" for the need for a proper *Franks* hearing. Dkt. 3, at 11. I need not address this argument given the Wisconsin Court of Appeals' proper review of Haakenstad's motion to suppress, but I do so to correct Haakenstad's mischaracterization of how the circuit judge handled the hearing. Haakenstad says the circuit judge was unwilling to hold a proper *Franks* hearing because, when his attorney pointed out that Standaert's affidavit was conclusory about M.H.'s reliability, the circuit judge said "the statement that [M.H.] was known to the West Central Drug Task Force and given good information, that's generally what I see in my affidavits when they are presented to me." Dkt. 2, at 11. The judge was explaining that in some circumstances, having limited details with respect to some parts of the affidavit is normal and acceptable. *See* Dkt. 15-41, at 48. This is a correct statement of the law. *See United States v. Searcy*, 664 F.3d 1119, 1123 (7th Cir. 2011) (reasoning that an affidavit showed probable cause despite the limited details, where the

affidavit showed that the informant had provided reliable information in the past). Haakenstad's argument is also misleading because it suggests that the judge focused entirely on a conclusory statement in Standaert's affidavit. The hearing transcript shows that the judge considered Standaert's affidavit as a whole, allowed both sides opportunities to present their arguments and evidence. And although the circuit court judge did not *require* Standaert to take the witness stand, the judge did not prohibit the parties from examining him either. Indeed, the judge gave Haakenstad an opportunity to present additional evidence, which his attorney declined.

Haakenstad had a full opportunity to litigate his Fourth Amendment challenge, so his habeas petition is barred under *Stone*.

## B. Harmless error

Haakenstad also cannot prevail because the alleged errors were harmless. The Court of Appeals concluded that the hearing did not affect the probable cause analysis because even if the court were to excise the challenged portion of Standaert affidavit, the remaining portions of the affidavit would have shown probable cause. Dkt. 19-2, at 3-7. I agree.

Haakenstad challenged Standaert's statement that M.H. was "known to the West Central Drug Task Force and has given good information in the past." Dkt. 19-2, at 5. Disregarding this statement still left the Standaert's statement that Folczyk had M.H. call Haakenstad, listened to the call on speakerphone, and heard Haakenstad telling M.H. that Haakenstad had methamphetamine. These remaining portions established probable cause.

Probable cause exists "where 'the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010) (quoting *Ornelas v.*

*United States*, 517 U.S. 690, 696 (1996)). "So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists." *United States v. Parra*, 402 F.3d 752, 763-64 (7th Cir. 2005). Hearsay can establish probable cause, even if there are multiple levels of hearsay. *United States v. Hollingsworth*, 495 F.3d 795, 805 (7th Cir. 2007).

The remaining portions of Standaert's affidavit showed probable cause because they showed that Haakenstad had methamphetamine in his apartment and that this information was reliable. Although Haakenstad insists that M.H. was unreliable, the issue here was not M.H.'s credibility: Folczyk himself heard Haakenstad on the phone saying that he had methamphetamine in his apartment. Haakenstad does not challenge Folczyk's credibility. Nor does Haakenstad deny that it was him speaking on the phone. Standaert's affidavit showed probable cause, so Haakenstad was not entitled to suppress the evidence from the search of his apartment. The Wisconsin Court of Appeals did not err in concluding that any error as to the April 22, 2013 hearing was harmless.

Haakenstad contends otherwise. The remaining portions of the affidavit did not show probable cause, Haakenstad says, because Standaert failed to record Folczyk's words verbatim. Standaert wrote:

> Haakenstad did not have any methamphetamine but told [M.H.] that he was going to be picking up an ounce of methamphetamine later in the evening and Haakenstad would call [M.H.] when he had more methamphetamine.
>
> Detective [Folczyk] heard Haakenstad tell [M.H.] that Haakenstad still had 16 grams of methamphetamine remaining from the ounce that Haakenstad had purchased the night before.

Dkt. 20, at 7-8. Haakenstad does not deny that what Standaert wrote was true—that is, he did have methamphetamine—but he argues that words not in verbatim do not "rise to the level of

12

credibility sufficient to support a finding of probable cause." *Id*. at 8. This is not an argument Haakenstad presented to the state courts. In any event, Standaert was not required to write Folczyk's words verbatim, and the fact that the quotes were paraphrased does not affect the probable cause analysis. *See United States v. Shields*, 783 F. Supp. 1058, 1076 (N.D. Ill. 1991).

Haakenstad contends that holding a procedurally defective *Franks* hearing, by itself, warrants habeas relief because it was a misapplication of federal law. I disagree. "Nothing in the [AEDPA] suggests that it is appropriate to issue writs of habeas corpus even though any error of federal law that may have occurred did not affect the outcome." *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003); *accord Monroe*, 712 F.3d at 1112–13. Having a procedurally sound *Franks* hearing mattered only because that hearing could lead to suppression of the evidence used to show Haakenstad's guilt. The warrant affidavit showed probable cause, and the evidence from Haakenstad's apartment was properly seized, so Haakenstad is not in custody in violation of federal law.

In sum, Haakenstad's petition is barred under *Stone*, and the circuit court's errors were harmless. Haakenstad's habeas petition is denied.

## C. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, I must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. A certificate of appealability will not issue unless petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires him to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Although the rule allows me to ask the parties to submit arguments

on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Haakenstad has not made a showing, substantial or otherwise, that his conviction was obtained in violation of clearly established federal law as decided by the Supreme Court. Because reasonable jurists would not otherwise debate whether a different result was required, I will not issue him a certificate of appealability.

ORDER

IT IS ORDERED that:

1. Petitioner Christopher Wayne Haakenstad's petition for a writ of habeas corpus, Dkt. 2, is DENIED.

2. The clerk of court is directed to enter judgment in favor of respondent and close the case.

3. A certificate of appealability is DENIED. If petitioner wishes, he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Entered December 29, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge